## IN RE ESTATE OF OLE HALLAN.
## JACOB LYNG, APPELLANT.[1]

February 21, 1929.

No. 27,121.

*Anton Thompson,* for appellant.

*N. F. Field* and *Cyrus A. Field,* for respondent.

TAYLOR, C.

This is a contest over the will of Ole Hallan, a farmer of Otter Tail county, who died June 9, 1924, at the age of 86 years. The contestant charged that the testator lacked sufficient mental capacity to make a will and that he was induced to execute it by the undue influence of his son Christ Hallan. The probate court allowed the will and admitted it to probate. On appeal the district court affirmed the order of the probate court. The contestant appealed to this court from an order denying a new trial.

The trial court found:

"That at the time of the execution of said instrument, the said Ole Hallan was of full age and sound mind and memory, free from undue influence and under no restraint."

The only question for determination by this court is whether the above findings are sustained by the evidence.

[1]Reported in 223 N. W. 771.

The evidence as to the mental capacity of the testator is not only ample to sustain the finding that he was of sound mind, but would not justify a finding to the contrary. Contestant rests his claim of undue influence upon inferences which he would have the court draw from the relationship and conduct of the parties.

Ole Hallan, a native of Norway, came to Otter Tail county where he acquired a farm. He was married in that county in 1875, and he and his wife resided upon the farm until his death. They had five children, two of whom died young. The three who reached maturity were Jonas and Christ, twins, and Bena. Bena married Jacob Lyng and died many years ago leaving three children. This contest is instituted on behalf of these children by their father. Christ married and for some years prior to 1918 resided in Minneapolis. Jonas never married and remained upon the farm with his parents.

Many years ago Ole Hallan became crippled with rheumatism to such an extent he was unable to move about the house except by the aid of a chair or canes or a crutch. He had acquired 345 acres of land and considerable personal property. After he became crippled and unable to carry on farming operations, he and his wife conveyed the farm and personal property to Jonas, and Jonas was to support them during their lives. Jonas operated the farm under this arrangement for some years, he and his parents living upon the farm the same as before, the father, owing to his crippled condition, seldom leaving the house. On October 18, 1918, Jonas died, and the entire property passed back to his father and mother in equal shares as his heirs. Christ was then the only living child. He came to the farm just before Jonas died, and about a week later came and took charge of the farm and thereafter operated it and cared for his parents until his father's death nearly six years later.

The will was executed about two months after Christ took charge of the farm. It was drawn by an attorney at Fergus Falls who died before this controversy arose. He was a stranger to Christ but had transacted business for Ole. Christ went to his office and gave him the information from which the will was drawn, but testifies

that he, Christ, made up none of the information so given. A few days later he obtained the will from the attorney and took it to his father. As both he and his mother were beneficiaries under the will, they were barred from giving any conversation with the father concerning it. The father could talk and understand English but could not read it. He could read Norwegian however and spent much of his time in reading. The evidence shows that he was well informed, of more than usual intelligence, and that he possessed a strong will and was very positive and decided in his opinions. Both Christ and his mother testify that Christ read the will to his father in English and then translated it to him in Norwegian. The father retained it a few days before executing it. When it was executed the witnesses were called in by Christ. One was a man employed on the farm who had been so employed for some years; the other was a neighboring farmer. Those present were Christ, his father and mother, and these witnesses. The will lay upon a table. The testator shoved a chair along to reach the table and signed it; and the witnesses then signed it. It was not read or explained at this time. One of the witnesses states that the testator said it was a will and that he raised his hand and said, "I know what I am doing." The other witness states that the testator held up his hand and said, "I know what I am doing;" and that he also said, "I am going to tell you what is in this paper," whereupon the mother said, "Don't say anything, Ole," to which he answered, "No, I am not saying anything," and made no further explanation.

The will recited that he and his wife were equal joint owners of the property inherited from their son Jonas. It gave $250 to each of the children of Bena; gave a life estate in his half interest in the real estate to his wife; and gave the remainder of his property to Christ. The will remained in the possession of the testator until his death more than five years later; and during this period Christ gave up his prior business, that of an engineer, and managed and conducted the farming operations.

The contestant relies upon the facts above recited to establish his claim that the evidence requires a finding of undue influence.

We cannot sustain this claim. On the contrary we think the trial court could well find an absence of undue influence. The case of Keeley v. Ochs, 167 Minn. 120, 208 N. W. 535, cited by contestant and in which the cases are reviewed, contains nothing to the contrary. The facts in that case were widely different from the facts in this, and we were of opinion that the finding of undue influence in that case was warranted by the evidence in that case. Here we are of the opinion that the finding that the testator was free from undue influence is warranted by the evidence in this case.

Order affirmed.

HILTON, J. took no part.